UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Case No. 20-cv-1036 (DWF/KMM)

In the Matter of Minnetonka Public Schools,
Independent School District No. 276,

        Plaintiff,

v.

M.L.K., by and through his Parents, S.K.
and D.K.,

        Defendants.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE RECORD**

## INTRODUCTION

This matter concerns a fifth-grade student who completed five years of elementary school in the Minnetonka Public Schools without the proper special education services he needed to address a severe language-based learning disability caused by dyslexia. Despite clear and unmistakable indicators of dyslexia since kindergarten M.L.K. and his Parents were never offered or provided the proper evaluation or services necessary to address the stagnation in his reading and writing skills at a beginning first grade level despite provision of special education from the District, persistent effort by M.L.K., solidly average intellectual ability, and significant supports from his Parents. Despite established standards in the field of literacy that recognize the critical importance of early identification and remediation of symptoms of dyslexia beginning in kindergarten, the

District overlooked obvious and numerous markers of dyslexia and ignored its obligations to identify and evaluate the cause of M.L.K.'s academic difficulties.

Over his elementary school years M.L.K was provided ineffective and misdirected educational services based on a fundamental misunderstanding of his disabilities and educational needs. Each IEP failed to produce meaningful progress. Each evaluation and re-evaluation missed the mark of identifying and addressing the underlying *cause* of the District's documented and failed educational efforts despite M.L.K.'s palpable struggles and suffering. Without identifying the underlying cause of the failure to teach M.L.K. to read and write, the District could not design a *remedy* and revise its program to produce progress. Even when his Parents sought and obtained a private educational evaluation and private dyslexia-specific tutoring services that properly identified his disabilities and needs for the District, that information was ignored by the District. Throughout all of those years the record reflects a laudable commitment by his Parents to work cooperatively with the District to recognize and attend to M.L.K.'s needs to learn to read and write, a District that knew better than to ignore his need to be properly identified and served, and a shameful and inexplicable resistance by the District to years of respectful yet ardent parental advocacy causing an avoidable educational casualty.

It was this overwhelming evidence that led the Administrative Law Judge ("ALJ") to issue a comprehensive and compelling decision in favor of M.L.K. and his Parents on January 30, 2020, now sought to be reversed by the District.[1]  After four months of multiple failed pre-hearing motions by the District to eliminate and limit claims, five days

---

[1] Doc. 13-5, pp. 339-394.

of hearing with nine witnesses including three experts, and 1,497 pages of admitted exhibits, the ALJ properly concluded that "the Parents met their burden to prove that District did not provide Student with a FAPE [free appropriate public education] and the District did not meet its burden to prove that its evaluation of Student met the standards in law."[2] Those conclusions were well-supported by the facts and by legal standards properly applied. Judgment on the administrative record should be granted in favor of the Student and his Parents and denied to the District.

## STANDARD OF REVIEW

Under the IDEA, a party may seek review of an administrative decision by bringing an action in federal district court.[3] Courts must review the administrative proceedings, hear additional evidence if necessary, and determine whether the preponderance of the evidence shows that the District complied with the IDEA's requirements.[4] The IDEA's preponderance of the evidence standard "is a less deferential standard of review than the substantial evidence test common to federal administrative law."[5] The Court should make an independent decision based on the evidence.[6]

However, "judicial review under the IDEA is limited" and the district court must give "due weight" to the administrative proceedings, resisting any impulse to "substitute

---

[2] Doc. 13-5, p 342.
[3] 20 U.S.C. § 1415(i)(2)(A).
[4] *K.E. ex rel. K.E. v. Ind. Sch. Dist. No. 15,* 647 F.3d 795, 803 (8th Cir. 2011); 20 U.S.C. § 1415(i)(2)(C).
[5] *Ind. Sch. Dist. No. 283 v. S.D.,* 88 F.3d 556, 561 (8th Cir. 1996).
[6] *Neosho R-V Sch. Dist. v. Clark,* 315 F.3d 1022, 1027-8 (8th Cir. 2003).

[its] own notions of sound educational policy for those of the [trained educators making administrative decisions.]"[7]  The U.S. Supreme Court admonished courts reviewing these administrative decisions to defer to the education officials who are agents of the state education agency that serve as its hearing officers to "avoid imposing their view of preferable educational methods upon the States."[8]  The Court emphasized that the "preponderance of the evidence" standard of review of administrative decisions under the IDEA "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review.  The very importance which Congress has attached to compliance with certain procedures in the preparation of an IEP would be frustrated if a court were permitted simply to set state decisions at naught."[9]

The district court must give due weight to the factual findings from the administrative decision in addition to deferring to its educational policy decisions.[10]  Deference to agency decision-making is appropriate because the hearing officer had an opportunity to observe the demeanor of the witnesses.[11]  Review of a special education administrative decision may be conducted even if there are disputed issues of material

---

[7] *E.S. v. Ind. Sch. Dist. No. 196,* 135 F.3d 566, 569 (8th Cir. 1998), quoting *Bd. of Educ. v. Rowley,* 458 U.S. 176, 206 (1982).
[8] *Rowley, supra,* 458 U.S. at 207.
[9] *Id.*
[10] *J.H. v. Republic R-III Sch. Dist.,* 632 F.3d 1024, 1026 (8th Cir. 2011); *Gill v. Columbia 93 Sch. Dist.,* 217 F.3d 1027, 1037 (8th Cir. 2000).  See also *S.H. v. State-Operated Sch. Dist. of the City of Newark,* 336 F.3d 260, 270 (3rd Cir. 2003) ("[f]actual findings from the administrative proceedings are to be considered prima facie correct").
[11] *C.J.N. v. Minneapolis Public Schools,* 323 F.3d 630, 636 (8th Cir. 2003).

fact,[12] and the party challenging the decision bears the burden of proof.[13] As to questions of law, the court applies a *de novo* standard of review.[14]

Hearing officers are entitled to deference on review and are properly reversed only when they have committed clear error as to any factual findings and abuse of discretion as to the remedy.[15] Because the District cannot sustain its burden to establish *any* clear error in factual findings, *any* error in application of governing legal authority, or *any* abuse of remedial discretion, the Decision should be affirmed in its entirety.

## STATEMENT OF THE RELEVANT FACTS

At the time of the hearing, M.L.K. was halfway through his fourth grade but had not learned to read or write as well as most first grade students[16] despite his hard work, compliance and intelligence, and the receipt of special education for four years. M.L.K. demonstrated, and his educational records documented, the classic characteristics of a child with dyslexia[17] and Attention Deficit-Hyperactivity Disorder.[18] Although dyslexia

---

[12] *Ind. Sch. Dist. No. 283 v. S.D., ex rel. J.D.,* 88 F.3d 556, 561 (8th Cir. 1996).
[13] *E.S. v. Ind. Sch. Dist. No. 196, supra.*
[14] *R.M.M. by and through T.M. v. Minneapolis Public Schools,* 2017 WL 2787606 * 4 (D. Minn. 2017), citing *O'Toole v. Olathe Dist. Schs. Unified Sch. Dist. No. 233,* 144 F.3d 692, 699 (10th Cir. 1998).
[15] *Reid ex rel. Reid v. Dist. of Columbia,* 401 F.3d 516, 522 (D.D.C. 2005), citing *Patricia P. v. Bd. of Educ. of Oak Park,* 203 F.3d 462, 466-67 (7th Cir. 2000)(fact-finding) and *Parents of Student W. v. Puyallup Sch. Dist. No. 3,* 31 F.3d 1489, 1497 (8th Cir. 1994)(remedial discretion).
[16] Doc. 13-1, p. 224.
[17] Minn. Stat. § 125A.01, Subd. 2 defines dyslexia and emphasizes the importance of early identification and remediation.
[18] The Centers for Disease Control and Prevention define ADHD by reference to the DSM-5. See fn. 3, Student and Parents' Post-Hearing Brief ("Brief"), Doc. 13-5, p. 337

is the most common cause of reading and writing difficulties, the District refused to offer or propose an evaluation to identify those disabilities and its evaluations ignored these obvious reasons why M.L.K. did not learn to read or write. The District's own educational records establish a chronic and persistent history of failure to identify numerous red flags over four critical years of development that should have alerted educators that M.L.K. was not appropriately identified or served.[19]

M.L.K.'s Parents provided a Neuropsychological Evaluation Report from Fraser Center in November 2018 that reflected "[s]ignificant difficulties with reading skills and significant delays in his phonetic processing abilities consistent with a diagnosis of SLD with impairment in reading."[20] In February, 2019, his treating pediatrician wrote to the District to indicate that "his dyslexia is significant and likely the primary impediment to his educational success at his current grade level."[21] In March, 2019, the Fraser Neuropsychologist wrote again to reiterate that reading is "his largest area of educational intervention need."[22] When the District ignored those recommendations for dyslexia-specific instruction, his Parents hired a series of private tutors to provide that instruction, producing progress in his reading and writing skills.[23]

---

[the remainder of the Brief was not filed by MDE and a corrective filing has been requested so that the record is complete. Dyslexia and ADHD are highly co-morbid conditions, occurring together at the rate of about 40%. Doc. 13-3, pp. 129 and 299.
[19] See, fn. 4, Brief, pp. 2-3, incorporated herein by reference [Doc. 13-5 missing pages 2-20].
[20] Doc. 13, p. 410.
[21] Doc. 13, p. 387.
[22] Doc. 13, p. 392.
[23] Doc. 13-6, pp. 10-146.

Only after initiation of these proceedings and completion at Parent expense of an independent educational evaluation over the District's resistance did it finally *begin* to provide M.L.K. *some* of the dyslexia-specific special education he needed based on those recommendations that his Parents gladly accepted while requesting the full complement of services he needed.[24] The administrative Decision properly determined and ordered the remainder of the prospective and retrospective relief M.L.K. needs to close the academic achievement gaps with his peers and move towards grade-level skills.

## ARGUMENT

The Decision properly determined that the District denied M.L.K. a FAPE when it failed to comply with six critical and interlocking legal obligations by its: 1) failure to assess M.L.K. in all areas of suspected disability; 2) failure to review existing data and identify additional data needed to determine his disabilities and educational needs in order to meet reasonable goals and objectives in an IEP and access the general education curriculum.; 3) failure to develop IEP goals to meet his needs and make progress in the general education curriculum; 4) failure to develop an IEP considering all required factors; 5) failure to review progress and revise his IEPs to reflect lack of expected progress towards annual goals and in the general curriculum; and 6) failure to provide M.L.K. with IEPs to produce progress appropriate to his circumstances.[25] The Decision

---

[24] Doc. 13, pp. 290-295.
[25] Doc. 13-5, p. 375.

also properly determined that the District failed to establish that its evaluation of M.L.K. was appropriate.[26]

These legal conclusions are based on undisputed facts in the record, including a consensus of consistent expert opinions from both parties, and an unassailable application of proper legal standards. The District failed completely at the administrative hearing to establish either a factual or legal basis to justify its actions, and it will be unable to sustain its burden of proof on appeal to show reversible error in the well-reasoned Decision of the ALJ entitled to due deference on review. Nonetheless, the District appeals despite the continuing lack of merit of each of its positions, regurgitated on appeal still without factual or legal support, and without any basis in law or fact warranting reversal on any issue.

The District's appeal picks at imagined nits in the Decision, none of which matter in a review of the correctness of its conclusions as to material facts and the law. The Decision established three fundamental issues. First, that the District failed in its child-find duties to timely and appropriately identify M.L.K. as a student with dyslexia and ADHD requiring special education and related services. Second, that the failure to properly identify his *specific disabilities* and *specific educational needs* caused the District to fail to develop and implement an effective special education program in order to provide M.L.K. a free appropriate public education so that he could progress in reading and writing skills. And third, that those failures caused M.L.K. significant but remediable educational harm that supports reimbursement of private expenses and

---

[26] Doc. 13-5, p. 376.

compensatory education services built into an enhanced and robust IEP under which he is thriving. The prospect for his future is now bright and promising thanks to the Decision.

Because the Decision established well the operative facts and applicable law, the Student and his Parents incorporate it here by reference and rely upon it as a sufficient basis to support judgment on the administrative record in their favor. The Student and his Parents will preserve the bulk of their arguments and additional citations to the record for their Reply to the District's motion.

## CONCLUSION

None of the District's claims on appeal has merit, and no basis exists to reverse or modify any of the sound determinations of the ALJ. The Decision should be affirmed in its entirety and the District's appeal dismissed.

Respectfully submitted,

**SCHOOL LAW CENTER, LLC.**

Dated: October 26, 2020

By: *s/ Amy J. Goetz*
Amy J. Goetz (#214711)
452 Selby Avenue, Suite 2 East
Saint Paul, Minnesota 55102
(651) 222-6288

**ATTORNEYS FOR DEFENDANTS**