UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Minnetonka Public Schools, Independent School District No. 276, | Case No. 0:20-cv-01036-DWF-KMM |
| Plaintiff, | |
| v. | **MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S MOTION** |
| M.L.K., a minor child, by and through his Parents, S.K. and D.K., | |
| Defendant. | |

## INTRODUCTION

When schools use their expertise to address a child's distinct educational needs, courts must give their judgments appropriate deference. *K.D. v. Downington Area Sch. Dist.*, 904 F.3d 248, 250 (3trd Cir. 2018) *citing Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S.Ct. 988, 1001-02 (2017). The ALJ failed to give the educators' expertise that deference. She ignored the preponderance of evidence that the District identified the Student's special education needs, provided a substantial suite of services and that the Student made progress in light of his unique circumstances. The District is entitled to judgment on the administrative record.

## ARGUMENT

**I.     Standard of Review.**

Parents incorrectly assert that the Court must defer to the ALJ's "educational policy decisions." Doc. No. 23, at 3-4. Instead of deferring to the ALJ, the Court has a

duty to "review the administrative record" and base its decision on "the preponderance of the evidence." The "due weight" standard of review "is less deferential than the substantial-evidence standard commonly applied in federal administrative law." *K.E. ex rel. K.E. v. Indep. Sch. Dist. No. 15*, 647 F.3d 795, 803 (8th Cir. 2011). It does not require the Court to defer to the ALJ's legal conclusions or educational policy decisions. *See Id.* at 804. As long as the Court defers to "the ALJ's observations of the witnesses [and does not] substitut[e] its own notions of educational policy for those of trained educators," it gives appropriate "due weight" to the administrative proceeding. *Id.* at 803-04.

## II.  District Identified Student's Special Education Needs.

Dr. Zeigler, the Parents' expert, testified that the District identified the Student's needs including attention, autism, speech language needs and dyslexia. Doc. 13.3 p.123, ll.11-15; p. 168, ll.4-10; p. 192, l.13-20 (identified phonological processing, decoding, and reading fluency in each IEP). Dr. Zeigler stated that it was not that the District did not attend to the Student's dyslexia, his concern was that without making the Student eligible under SLD and OHD, the staff might not make reading or attention a priority. Doc. 13.3, p.250, ll.9-10; p.284, ll.9-12. But his own testimony affirms that was not the case. He testified that beginning with first grade, the IEPs focused on reading, written language and math. Doc.13.3, p.191-92. Every IEP described these needs and corresponding goals. Every educator testified that they identified and understood the Student's needs in phonics, decoding and reading fluency. The Student's special education needs were identified.

The Student's special needs were attended to via research-based curriculum, highly trained teachers, and increasing amounts and intensity of services. Dr Ziegler agreed that the District did each of the following appropriate response to intervention steps:

- First, identify the Student's needs; Doc. 13.3 p. 245-246.
- Use research-based curriculum; Doc. – p. 246, ll. 7-10 p.181, l.8-12 and
- Increase the intensity of services in response to slower progress. Doc.13.3 p.246, ll.11-14,15-20.

He testified that some students' progress is slower because of their constellation of needs rather than because of a failure of the educators. Doc. 13.3 p.184, ll.21-25. The Student's constellation of needs was significant according to all of the witnesses. Doc.13.3 p.120, l.16-22; p.156, l.18-21. "[Student] is a profoundly dyslexic young man with significant phonological processing issues, with significant symbol/sound association issues or phonics issues, with concomitant ADHD, which exacerbates learning, and some receptive expressive language difficulties that also impact learning." Doc. 13.3p.426, ll.16-21. The District had significant foundational work do to with the Student because of this profile – he required repeated instruction to learn the alphabet, the letter names and then the letter sounds. Doc. 13.3 p.1116, ll.7-11.  He required constant adult support and numerous accommodations in order to stay focused on the instruction. Doc. 13.3 p.1112. The ALJ in error found that the "gap" between the Student's reading level and his peers indicated failure by the District. She ignored the progress the Student did make and the opinions of Parents' experts that it would be speculation to opine that he might be further along given

3

other services. Doc. 13.3 p. 441,ll.5-10; p. 197, ll.5-6 ("we don't know if 90 minutes of service is appropriate until we get some progress [data]")p.244, ll. 24-25 ("I don't know if [Student] can learn to read at grade level"); Doc.13.3 p.464,ll.8-13. The standard under IDEA is not whether the Student achieves with his peers but whether the suite of services provided is designed to meet the student's unique needs and aims to produce progress.

### III.    Student Received a FAPE.

The record in this case demonstrates that the Student made progress in light of his unique needs.  The ALJ found *C.B. v. Special Sch. Dist. 1,* 636 F.3d 981 (8th Cir. 2011) dispositive.  Doc. No. 13-5, at 40.  But clearly is not.  In *C.B.*, the student's only disability was dyslexia.  636 F.3d at 983-84. In contrast, the Student in this case has significant phonological processing issues, significant phonics issues, significant ADHD, autism and receptive expressive language difficulties - all conditions that impact learning. M.L.K. had research-based reading programming in kindergarten, C.B.  did not have such programming until grade three. C.B. had only 30 minutes of small group reading up to grade three. M.L.K. had one to one instruction from Kindergarten on and his minutes of special education increased from 30 minutes per day to 90 minutes per day.  In light of these stark differences, the ALJ's reliance on the *C.B.* decision was misplaced.

This case is much more akin to *K.D. v. Downington Sch. Dist*., 904 F.3d 248 (3rd Cir. 2018). Like in this case, K.D.'s educators had "significant foundational work to do" because K.D. had ADHD, processing issues, reading and math learning disabilities. *Id.* at 254. The Court found that K.D.'s slow progress did not prove that her IEPs were

4

deficient.  "The IEP *must aim* to enable the child to make progress. We may not rely on hindsight to second-guess an educational program that was reasonable at the time. Rather than presuming grade-level advancement, the Act requires revisions to education programs "*as appropriate* to address any lack of expected progress toward the annual goals and in the general education curriculum, *where appropriate*." *Id.* at 255. 1414(d)(4)(A)(ii), (ii)(I) . *Dunn* at 255 (internal citations omitted). That is precisely what occurred here; the District identified the needs and addressed them with ever increasing intensity and the Student made slow progress in reading and great progress in the foundational skills.

### IV.   Conclusion

The evidence clearly supports the conclusion that the District's evaluation was appropriate, and that the Student received a FAPE.  The ALJ's order should be reversed and judgment entered in the District's favor.

**RATWIK, ROSZAK & MALONEY, P.A.**

Dated: 11/13/2020        By:        s/ Laura Tubbs Booth
                                    Laura Tubbs Booth
                                    Attorney Reg. No. 0186910
                                    Christian R. Shafer
                                    Attorney Reg. No. 0387947
                                    730 Second Avenue South, Suite 300
                                    Minneapolis, MN 55402
                                    ATTORNEYS FOR PLAINTIFF

RRM:     386278